UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| DORRY THAMES, | Case No. 11-15294 |
| Plaintiff, | Patrick J. Duggan |
| v. | United States District Judge |
| COMMISSIONER OF SOCIAL SECURITY, | Michael Hluchaniuk |
| | United States Magistrate Judge |
| Defendant. | |
| _____/ | |

**REPORT AND RECOMMENDATION**
**CROSS-MOTIONS FOR SUMMARY JUDGMENT (Dkt. 13, 16)**

## I.   PROCEDURAL HISTORY

### A.   Proceedings in this Court

On December 2, 2011, plaintiff filed the instant suit seeking judicial review of the Commissioner's unfavorable decision disallowing benefits.  (Dkt. 1). Pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 72.1(b)(3), District Judge Patrick J. Duggan referred this matter to the undersigned for the purpose of reviewing the Commissioner's decision denying plaintiff's claim for social security disability benefits.  (Dkt. 2).  This matter is before the Court on cross-motions for summary judgment.  (Dkt. 13, 16).

### B.   Administrative Proceedings

Plaintiff filed the instant claims on November 24, 2009, alleging that she

became unable to work on September 1, 1993.  (Dkt. 7-2, Pg ID 40).  The claim

was initially disapproved by the Commissioner on June 30, 2010.  (Dkt. 7-2, Pg ID

40).  Plaintiff requested a hearing and on May 4, 2011, plaintiff appeared with

counsel before Administrative Law Judge (ALJ) David S. Lewandowski, who

considered the case *de novo*.  In a decision dated May 19, 2011, the ALJ found that

plaintiff was not disabled.  (Dkt. 7-2, Pg ID 40-55).  Plaintiff requested a review of

this decision on June 2, 2011.  (Dkt. 7-2, Pg ID 36).  The ALJ's decision became

the final decision of the Commissioner when, after the review of additional

exhibits,[1] the Appeals Council, on October 7, 2011, denied plaintiff's request for

review.  (Dkt. 7-2, Pg ID 25-27); *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541,

543-44 (6th Cir. 2004).

  For the reasons set forth below, the undersigned **RECOMMENDS** that

plaintiff's motion for summary judgment be **GRANTED**, that defendant's motion

for summary judgment be **DENIED**, that the findings of the Commissioner be

**REVERSED**, and that this matter be **REMANDED** for further proceedings.

---

[1] In this circuit, where the Appeals Council considers additional evidence but denies a request to review the ALJ's decision, since it has been held that the record is closed at the administrative law judge level, those "AC" exhibits submitted to the Appeals Council are not part of the record for purposes of judicial review. *See Cotton v. Sullivan*, 2 F.3d 692, 696 (6th Cir. 1993); *Cline v. Comm'r of Soc. Sec.*, 96 F.3d 146, 148 (6th Cir. 1996). Therefore, since district court review of the administrative record is limited to the ALJ's decision, which is the final decision of the Commissioner, the court can consider only that evidence presented to the ALJ. In other words, Appeals Council evidence may not be considered for the purpose of substantial evidence review.

## II.     FACTUAL BACKGROUND

### A.     ALJ Findings

Plaintiff was 39 years of age at the time of the most recent administrative hearing and 21 years old at the time of the alleged disability onset.  (Dkt. 7-2, Pg ID 46).  Plaintiff has past relevant work history as a cashier/checker, flower worker, and fast-food crew member.  (Dkt. 7-2, Pg ID 53).  The ALJ applied the five-step disability analysis to plaintiff's claim and found at step one that plaintiff had not engaged in substantial gainful activity since the application date, November 24, 2009.  (Dkt. 7-2, Pg ID 42).  At step two, the ALJ found that plaintiff's degenerative disc disease of the lumbar spine; chronic bilateral foot pain; asthma with allergies; kidney disorder; interstitial cystitis; obesity; obsessive-compulsive disorder; panic disorder; generalized anxiety disorder; and mild major depression were "severe" within the meaning of the second sequential step.  *Id*.  At step three, the ALJ found no evidence that plaintiff's combination of impairments met or equaled one of the listings in the regulations.  (Dkt. 7-2, Pg ID 43).  At step four, the ALJ found plaintiff unable to perform any past relevant work, but could perform light work, except she must have the option to alternate between sitting and standing at will; she may occasionally perform postural activities, but must not perform any climbing of ladders, ropes, or scaffolds; she must avoid extreme temperatures, humidity, and environmental irritants, such as fumes, odors, dusts,

gases, and poor ventilation; she must avoid hazards, including moving machinery and heights; she requires the opportunity to take one bathroom break per hour, lasting 3-4 minutes in duration; she is able to perform simple, routine tasks on a sustained basis, but must only have occasional interactions with the general public and is limited to work in small, familiar groups; she must have close supervision, such that a supervisor must check on her hourly to see if she is on task; she may have occasional changes in the workplace setting and may occasionally make work-related decisions and judgments. (Dkt. 7-2, Pg ID 45-46). At step five, the ALJ denied plaintiff benefits because plaintiff could perform a significant number of jobs available in the national economy. (Dkt. 7-2, Pg ID 54).

      B.    <u>Plaintiff's Claims of Error</u>

Plaintiff argues that the ALJ failed to account for her moderate limitation in concentration, persistence or pace in the hypothetical question to the vocational expert. Plaintiff points to the mental residual functional capacity assessment performed by Dr. Judy Strait on March 17, 2010, in which she determined that plaintiff suffers from "moderate" limitations in the ability to understand and remember detailed instructions, the ability to carry out detailed instructions, the ability to maintain attention and concentration for extended periods, the ability to work in coordination with or proximity to others without being distracted by them, the ability to complete a normal workday and workweek without interruptions

from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods, the ability to interact appropriately with the general public, the ability to get along with coworker or peers without distracting them or exhibiting behavioral extremes, and the ability to respond appropriately to changes in the work setting.  (Tr. 305-306).  Dr. Strait opined that plaintiff would have difficulty with complex tasks and a demanding work environment, that she may not work well with the general public and may work best alone or in a small familiar group, and that her adaptation will vary.  (Tr. 307).  Dr. Strait also concluded that plaintiff could perform only simple, routine tasks on a sustained basis.  (Tr. 307).  Although the ALJ determined that this opinion evidence should be given "significant weight" as it is "consistent with the medical evidence of record," according to plaintiff, the ALJ failed to account for many of the limitations, opined by Dr. Strait, in forming hypothetical questions and the RFC analysis.

According to plaintiff, the ALJ's limiting her to "simple, routine tasks," does not account for plaintiff's difficulties in understanding and carrying out instructions or maintaining attention and concentration for extended periods, as plaintiff would still be required to understand and carry out instructions as well as concentrate for extended periods, despite the limitation provided by the ALJ. Similarly, plaintiff contends that a limitation to "occasional interaction with the

general public" does not adequately account for her difficulties acting appropriately with the general public, as plaintiff would still be required to act appropriately with the general public, despite the limitation provided by the ALJ. Plaintiff also contends that a limitation to "occasional changes in the workplace setting" does not adequately account for plaintiff's difficulties with responding appropriately to changes in the work setting, because she would still be required to respond appropriately to changes in the work setting, despite the limitation provided by the ALJ.  And, plaintiff argues that a requirement that a "supervisor check on her hourly to see if she is on task" does not adequately account for plaintiff's difficulty performing at a consistent pace without an unreasonable number or length of rest periods, as plaintiff would still be required to work at a consistent pace without unreasonable rest periods despite the limitation provided by the ALJ.  Plaintiff maintains that, considering that the ALJ agreed with and determined that the findings of Dr. Strait were consistent with the record, the ALJ should have fully accounted for all of the limitations in forming hypothetical questioning and the RFC determination.  Finally, plaintiff argues that without an accurate portrayal of all plaintiff's limitations, the vocational expert's testimony cannot serve as substantial evidence.

C.   Commissioner's Motion for Summary Judgment

According to the Commissioner, the ALJ was under no obligation to repeat all of the items in Dr. Strait's summary conclusions and properly accounted for Dr. Strait's ultimate conclusions that plaintiff "may not work well with the general public," "may work best alone or in a small, familiar group," and "retain[ed] the capacity to perform simple, routine tasks on a sustained basis." (Tr. 21-22, 69-71, 307). The Commissioner also contends that the jobs identified by the VE in response to questions that mirrored the ALJ's RFC finding could be performed by a person who had difficulty with complex tasks, maintaining long-term concentration, and performing at a fast pace. (Tr. 21-22, 69-71, 73-75).

According to the Commissioner, this case is similar to *Reynolds v. Commissioner of Social Security*, 2011 WL 3897793 (E.D. Mich. 2011), in which an ALJ relied on opinions from a state DDS medical source similar to the PRTF and MRFCF completed by Dr. Strait. As in this case, the medical source in *Reynolds* opined on a PRTF that the claimant had a moderate limitation in concentration, persistence, or pace. *Id*. at *8. The medical source completed a form identifying some of the same moderate limitations that Dr. Strait identified in the summary conclusions section of the MRFCF. (Tr. 305-06). The medical source in *Reynolds* found moderate limitations in areas including, but not limited to: understanding and remembering detailed instructions; carrying out detailed

instructions; and maintaining attention and concentration for extended periods. *Id*.

Dr. Strait found moderate limitations in those areas. (Tr. 305-06). The medical

source in *Reynolds* ultimately opined that the claimant retained the ability to

perform unskilled work on a sustained basis and simple, routine and repetitive

work activities in a stable work environment. *Id*. at *9. The Court found that the

ALJ reasonably relied on the medical source's ultimate opinion and explained that

"there [was] no basis for the ALJ to have adopted or relied on only certain parts of

the PRTF, while ignoring others." *Id*.

   According to the Commissioner, plaintiff's criticism of the ALJ's decision is

very similar to the plaintiff's arguments in *Reynolds*, and the result should be the

same. Here, the ALJ explicitly assigned significant weight to the ultimate

conclusions offered by Dr. Strait and incorporated them into the hypothetical

question. (Tr. 27, 307). Dr. Strait noted that plaintiff had moderate impairments in

cognition and concentration, reduced social functioning, and varying adaptation

(Tr. 307). She opined that plaintiff would be limited with respect to complex tasks

and demanding work environments; may not work well with the general public;

and may work best alone or in a small, familiar group. (Tr. 307). Dr. Strait

concluded that plaintiff "retain[ed] the capacity to perform simple, routine

tasks on a sustained basis." (Tr. 307). Compatible with Dr. Strait's opinion, the

Commissioner asserts that the ALJ incorporated mental limitations into the

hypothetical question including: only simple, routine tasks on a sustained basis; only occasional interaction with the general public; only work in small familiar groups; occasional interaction with coworkers; and occasional changes in the workplace setting, work-related decisions, and judgements.  (Tr. 69-71). According to the Commissioner, the ALJ adequately accounted for her mental limitations and properly relied on Dr. Strait's opinion.

The Commissioner urges the Court to reject plaintiff's argument that the hypothetical question did not account for the moderate limitations as found by Dr. Strait.  According to the Commissioner, plaintiff's argument is fundamentally flawed because, contrary to plaintiff's argument, Dr. Strait did not indicate that she could *never* interact appropriately with the general public.  That is, plaintiff interprets a moderate limitation in any activity to mean that Dr. Strait believed she had no useful ability to perform that activity.  The Commissioner contends taht there is no support for this interpretation in Dr. Strait's opinions.

D.    Plaintiff's Reply

Plaintiff argues that the present case is significantly distinguishable from *Reynolds*.   In the present case, the ALJ accorded "significant weight to the assessment of Dr. Strait, as it is consistent with the medical evidence of record."  (Tr. 27).  The beginning of Dr. Strait's ultimate conclusion contained in her PRTF Functional Capacity Assessment reads: "The claimant's cognition and

concentration are moderately impaired by her psychological symptoms, although primarily impaired by pain." (Tr. 307). Although Dr. Strait opined that plaintiff's cognition and concentration are in fact impaired by her psychological symptoms, she also opined that plaintiff's cognition and concentration are primarily impaired by her pain. (Tr. 307). According to plaintiff, neither defendant nor the ALJ explain how limitations to simple, routine tasks on a sustained basis, occasional interaction with the general public, work in small, familiar groups, close supervision, and occasional changes in the workplace and occasional work-related decisions and judgments would account for plaintiff's cognition and concentration impairment, where plaintiff's concentration is not only limited due to psychological limitations, but additionally due to pain.

Plaintiff further argues that although reducing the complexity of a task by limiting it to simple and routine may account for a concentration limitation from a psychological standpoint alone, in some instances, it would not account for cognition and concentration difficulties caused by pain, as the pain and corresponding concentration limitation would be present regardless of the complexity of the task. Without knowing to what extent plaintiff's pain adds to plaintiff's overall cognition and concentration impairment, plaintiff maintains that a VE would be unable to provide adequate and accurate testimony that could serve as substantial evidence.

Moreover, plaintiff points out that the ALJ found that plaintiff would require the opportunity to take "one bathroom break per hour, lasting three to four minutes in duration." According to plaintiff, the ALJ failed to consider the combined impact of all of plaintiff's impairments in making the RFC determination; specifically, the combined effect of plaintiff's cognitive and concentration impairment on her other restrictions. *See* SSR 86-8: "The adjudicator must evaluate the combined impact of those impairments on an individual's ability to function, rather than assess separately the contribution of each impairment to the restriction of function as if each impairment existed alone."). The VE testified at hearing that all work would be precluded if an employee were off task for any reason for 15% of the workday. (Tr. 74). According to plaintiff, taking plaintiff's need for hourly bathroom breaks into account, plaintiff would already be off task from 5% to 6.66% of the time. In forming her conclusion, plaintiff says that Dr. Strait did not take plaintiff's necessary bathroom breaks into account. Without the VE also being presented with evidence, through hypothetical questioning, regarding to what extent the person would be off task due to cognitive and concentration impairments, both from psychological impairments and physical pain, plaintiff contends that the VE would be unable to provide adequate and accurate testimony which could serve as substantial evidence.

Report and Recommendation
Cross-Motions for Summary Judgment
*Thames v. Comm'r*; Case No. 11-15294

## III.   DISCUSSION

### A.   Standard of Review

In enacting the social security system, Congress created a two-tiered system in which the administrative agency handles claims, and the judiciary merely reviews the agency determination for exceeding statutory authority or for being arbitrary and capricious.  *Sullivan v. Zebley*, 493 U.S. 521 (1990).  The administrative process itself is multifaceted in that a state agency makes an initial determination that can be appealed first to the agency itself, then to an ALJ, and finally to the Appeals Council.  *Bowen v. Yuckert*, 482 U.S. 137 (1987).  If relief is not found during this administrative review process, the claimant may file an action in federal district court. *Mullen v. Bowen*, 800 F.2d 535, 537 (6th Cir.1986).

This Court has original jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g).  Judicial review under this statute is limited in that the court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the record."  *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005); *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997).  In deciding whether substantial evidence supports the ALJ's decision, "we do not try the case de novo, resolve conflicts in evidence, or decide questions of credibility." *Bass v.*

*McMahon*, 499 F.3d 506, 509 (6th Cir. 2007); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). "It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 247 (6th Cir. 2007); *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 475 (6th Cir. 2003) (an "ALJ is not required to accept a claimant's subjective complaints and may ... consider the credibility of a claimant when making a determination of disability."); *Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 542 (6th Cir. 2007) (the "ALJ's credibility determinations about the claimant are to be given great weight, particularly since the ALJ is charged with observing the claimant's demeanor and credibility.") (quotation marks omitted); *Walters*, 127 F.3d at 531 ("Discounting credibility to a certain degree is appropriate where an ALJ finds contradictions among medical reports, claimant's testimony, and other evidence."). "However, the ALJ is not free to make credibility determinations based solely upon an 'intangible or intuitive notion about an individual's credibility.'" *Rogers*, 486 F.3d at 247, quoting Soc. Sec. Rul. 96-7p, 1996 WL 374186, *4.

If supported by substantial evidence, the Commissioner's findings of fact are conclusive. 42 U.S.C. § 405(g). Therefore, this Court may not reverse the Commissioner's decision merely because it disagrees or because "there exists in the record substantial evidence to support a different conclusion." *McClanahan v.*

*Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006); *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (*en banc*).  Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers*, 486 F.3d at 241; *Jones*, 336 F.3d at 475.  "The substantial evidence standard presupposes that there is a 'zone of choice' within which the Commissioner may proceed without interference from the courts." *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994) (citations omitted), citing, *Mullen*, 800 F.2d at 545.

The scope of this Court's review is limited to an examination of the record only.  *Bass*, 499 F.3d at 512-13; *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001).  When reviewing the Commissioner's factual findings for substantial evidence, a reviewing court must consider the evidence in the record as a whole, including that evidence which might subtract from its weight.  *Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992).  "Both the court of appeals and the district court may look to any evidence in the record, regardless of whether it has been cited by the Appeals Council." *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001).  There is no requirement, however, that either the ALJ or the reviewing court must discuss every piece of evidence in the administrative record.  *Kornecky v. Comm'r of Soc. Sec.*, 167 Fed.Appx. 496, 508 (6th Cir. 2006) ("[a]n ALJ can consider all the evidence without directly

addressing in his written decision every piece of evidence submitted by a party.")
(internal citation marks omitted); *see also Van Der Maas v. Comm'r of Soc. Sec.*,
198 Fed.Appx. 521, 526 (6th Cir. 2006).

   B.   Governing Law

   The "[c]laimant bears the burden of proving his entitlement to benefits."
*Boyes v. Sec'y of Health & Human Servs.*, 46 F.3d 510, 512 (6th Cir. 1994);
*accord*, *Bartyzel v. Comm'r of Soc. Sec.*, 74 Fed.Appx. 515, 524 (6th Cir. 2003).
There are several benefits programs under the Act, including the Disability
Insurance Benefits Program (DIB) of Title II (42 U.S.C. §§ 401 *et seq.*) and the
Supplemental Security Income Program (SSI) of Title XVI (42 U.S.C. §§ 1381 *et
seq.*).  Title II benefits are available to qualifying wage earners who become
disabled prior to the expiration of their insured status; Title XVI benefits are
available to poverty stricken adults and children who become disabled.  F. Bloch,
Federal Disability Law and Practice § 1.1 (1984).  While the two programs have
different eligibility requirements, "DIB and SSI are available only for those who
have a 'disability.'"  *Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007).
"Disability" means:

> inability to engage in any substantial gainful activity by
> reason of any medically determinable physical or mental
> impairment which can be expected to result in death or
> which has lasted or can be expected to last for a
> continuous period of not less than 12 months.

42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A) (DIB); 20 C.F.R. § 416.905(a) (SSI).

The Commissioner's regulations provide that disability is to be determined

through the application of a five-step sequential analysis:

> Step One:  If the claimant is currently engaged in substantial gainful activity, benefits are denied without further analysis.
>
> Step Two:  If the claimant does not have a severe impairment or combination of impairments, that "significantly limits ... physical or mental ability to do basic work activities," benefits are denied without further analysis.
>
> Step Three:  If plaintiff is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the severe impairment meets or equals one of the impairments listed in the regulations, the claimant is conclusively presumed to be disabled regardless of age, education or work experience.
>
> Step Four:  If the claimant is able to perform his or her past relevant work, benefits are denied without further analysis.
>
> Step Five: Even if the claimant is unable to perform his or her past relevant work, if other work exists in the national economy that plaintiff can perform, in view of his or her age, education, and work experience, benefits are denied.

*Carpenter v. Comm'r of Soc. Sec.*, 2008 WL 4793424 (E.D. Mich. 2008), citing, 20

C.F.R. §§ 404.1520, 416.920; *Heston*, 245 F.3d at 534.  "If the Commissioner

makes a dispositive finding at any point in the five-step process, the review terminates." *Colvin*, 475 F.3d at 730.

"Through step four, the claimant bears the burden of proving the existence and severity of limitations caused by her impairments and the fact that she is precluded from performing her past relevant work." *Jones*, 336 F.3d at 474, cited with approval in *Cruse*, 502 F.3d at 540. If the analysis reaches the fifth step without a finding that the claimant is not disabled, the burden transfers to the Commissioner. *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir. 2006). At the fifth step, the Commissioner is required to show that "other jobs in significant numbers exist in the national economy that [claimant] could perform given [his] RFC and considering relevant vocational factors." *Rogers*, 486 F.3d at 241; 20 C.F.R. §§ 416.920(a)(4)(v) and (g).

If the Commissioner's decision is supported by substantial evidence, the decision must be affirmed even if the court would have decided the matter differently and even where substantial evidence supports the opposite conclusion. *McClanahan*, 474 F.3d at 833; *Mullen*, 800 F.2d at 545. In other words, where substantial evidence supports the ALJ's decision, it must be upheld.

C.   Analysis and Conclusions

1.   Mental Impairments

The undersigned concludes that, as to plaintiff's mental impairments, this

case is controlled by *See Reynolds v. Comm'r*, 2011 WL 3897793 (E.D. Mich.

2011) and similar cases.  That is, plaintiff's moderate impairment of concentration,

persistence, or pace and other mental impairments were properly accounted for in

the hypothetical question and RFC.  As the Court observed in *Reynolds*, case law

has resolved this issue in a variety of seemingly inconsistent ways. *Taylor v.

Comm'r*, 2011 WL 2682682 *6, n. 3 and n. 4 (E.D. Mich. 2011) (collecting cases),

adopted as the decision of the Court via order dated July 11, 2011.  In *Taylor*,

Judge Michelson observed that, "[i]n analyzing this case law, the Court agrees that

a hypothetical simply limiting a claimant to unskilled work may, in some instances,

fail to capture a claimant's moderate limitation in concentration, persistence, or

pace because the difficulty of a task does not always equate with the difficulty of

staying on task." *Id*. at *7.  She also found, however, "that there is no bright-line

rule requiring remand whenever an ALJ's hypothetical includes a limitation of

'unskilled work' but excludes a moderate limitation in concentration.  Rather, this

Court must look at the record as a whole and determine if substantial evidence

supports the ALJ's decision." *Id*.

   In undertaking this examination, Judge Michelson pointed to a case nearly

identical to the one before her:

> Taken in isolation, the hypothetical limitations consisting
> of "[s]imple routine tasks in a low stress environment"
> and "minimal changes in the work place setting" might

> appear inadequate to account for "moderate"
> concentrational and pacing deficiencies. However, the
> record as a whole indicates that the hypothetical question
> and the ALJ's finding of "moderate" limitations findings
> are not incompatible.

*Hess v. Comm'r of Soc. Sec.*, 2008 WL 2478325, at *7 (E.D. Mich. 2008).  In this

case, the consulting examiner found that plaintiff had moderate difficulties in

cognition and concentration that were moderately impaired by her psychological

symptoms, although she was primarily impaired by pain.  (Dkt. 7-7, Pg ID 336).  In

the Mental Residual Functional Capacity Assessment (Dkt. 7-7, Pg ID 334-335),

Dr. Strait found plaintiff to be moderately limited in eight of the 20 categories;

specifically, the ability to understand and remember detailed instructions, the

ability to carry out detailed instructions, the ability to maintain attention and

concentration for extended periods, the ability to work in coordination with or

proximity to others without being distracted by them, the ability to complete a

normal work-day and workweek without interruptions from psychological based

symptoms and to perform at a consistent pace without an unreasonable number and

length of rest periods, the ability to interact appropriately with the public, the

ability to get along with coworkers or peers without distracting them or exhibiting

behavioral extremes, and the ability to respond appropriately to changes in the

work setting.  *Id.*  In *Hess* and *Taylor*, the courts both concluded that because the

ALJ relied on the opinions in the PRTF to reach his conclusion that the plaintiff

had moderate limitations in concentration, persistence, and pace, it was reasonable for the ALJ to also rely on the ultimate conclusion in the PRTF that the plaintiff could perform unskilled work on a sustained basis. *Taylor*, at *8.

Here, the PRTF also concluded that plaintiff retained "the capacity to perform simple, routine tasks on a sustained basis" despite her moderate impairments.  (Dkt. 7-7, Pg ID 336).  Thus, just as in *Taylor* and *Hess*, the ALJ reasonably relied on the ultimate opinion that plaintiff was capable of working and there is no basis for the ALJ to have adopted or relied on only certain parts of the PRTF, while ignoring others.  *Hess*, at *8 ("Plaintiff's argument for the selective adoption of Dr. Marshall's 'moderate' limitations without considering the ultimate conclusion would amount to a distortion of the record."); *see also Lewicki v. Comm'r of Soc. Sec.*, 2010 WL 3905375, *3 (E.D. Mich. 2010) ("Plaintiff's objection ignores a particularly compelling piece of evidence provided by the same state psychologist who diagnosed Plaintiff's mental limitations in the first place. The psychologist diagnosed moderate mental impairments, but also concluded that Plaintiff's mental limitations would not prohibit him from performing simple, unskilled work.").  Additionally, the ALJ did not simply limit plaintiff to "unskilled work."  Rather, the ALJ accounted for the plaintiff's specific limitations in the PRTF by limiting plaintiff to simple, routine tasks on a sustained basis, with only occasional interactions with the general public, work in small, familiar

groups, close supervision, such that a supervisor must check on her hourly to see if she is on task, and only occasional changes in the workplace setting along with occasional work-related decisions and judgments.  (Dkt. 7-7, Pg ID 336); *see Taylor*, at *9 (A reasonable interpretation of the opinions as a whole in the PRTF indicate that the concentration limitations identified do not preclude consistent or sustained concentration in a stable, simple, and repetitive task setting).[2]  It is unclear to the undersigned how or why the result should be different if plaintiff's cognition and concentration impairments are due in part to pain, as opposed to a specific mental impairment, particularly where Dr. Strait expressly considered the effects of plaintiff's pain complaints and the ALJ relied on her opinion.  For these reasons, the undersigned finds no basis to conclude that the hypothetical question was flawed or unsupported by substantial evidence as to plaintiff's mental impairments.

### 2.   Single decision-maker

The undersigned is troubled, however, that the ALJ did not obtain an expert opinion on the issue of equivalence as to plaintiff's physical impairments, which

---

[2]  Just as in *Taylor*, this case is distinguishable from *Ealy v. Comm'r*, 594 F.3.d 504 (6th Cir. 2010) in which the Sixth Circuit found the ALJ's hypothetical to be deficient because it failed to include the limitation from the state DDS consultant that the plaintiff was only able to sustain attention to complete tasks in two hour segments over an eight hour day where speed was not critical. Here, just as *Taylor*, (and unlike the circumstances in *Ealy*) the consulting physician substantially reduced the significance of the PRTF limitations by concluding that the plaintiff could perform work activity on a sustained basis.

would also necessarily include an evaluation of the impact of her pain complaints on her physical abilities.  In this case, the single-decision maker (SDM) model was used pursuant to 20 C.F.R. §§ 404.906(b)(2).  This regulation provides streamlined procedures as an experiment, in which State Agency disability examiners may decide cases without documenting medical opinions from State Agency medical consultants.  The "single decisionmaker model" was an experimental modification of the disability determination process that happens to have been used in Michigan. *See Leverette v. Comm'r*, 2011 WL 4062380 (E.D. Mich. 2011).  This experiment eliminated the reconsideration level of review and allowed claims to go straight from initial denial to ALJ hearing.  *Id.*  Most significantly, it allowed the state agency employee (the single decisionmaker) to render the initial denial of benefits without documenting medical opinions from the state agency medical consultants. *Id.*, citing 20 C.F.R. §§ 404.906(b)(2), 416.1406(b)(2).  The Programs Operations Manual System (POMS) requires it to "be clear to the appeal-level adjudicator when the SSA-4734-BK [the PRFC assessment form] was completed by an SDM because SDM-completed forms are not opinion evidence at the appeal levels." POMS DI § 24510.05.  In this case, there was a Physical Residual Functional Capacity Assessment completed by an SDM, Kathy Mistele.  (Dkt. 7-8, Pg ID 392-399).  Thus, no medical opinion was obtained at this level of review, in accordance with this model.

While the ALJ did not rely on the opinions of the SDM, which would have been wholly improper, the lack of any medical opinion on the issue of equivalence is still an error requiring remand. As set forth in *Stratton v. Astrue*, — F.Supp.2d —; 2012 WL 1852084, *11-12 (D. N.H. 2012), SSR 96-6p describes the process by which ALJs are to make step-three determinations:

> The administrative law judge ... is responsible for deciding the ultimate legal question whether a listing is met or equaled. As trier of the facts, an administrative law judge ... is not bound by a finding by a State agency medical or psychological consultant or other program physician or psychologist as to whether an individual's impairment(s) is equivalent in severity to any impairment in the Listing of Impairments. However, *longstanding policy requires that the judgment of a physician* (or psychologist) designated by the Commissioner *on the issue of equivalence on the evidence* before the administrative law judge ... *must be received into the record as expert opinion evidence and given appropriate weight*.

1996 WL 374180, at *3 (emphasis added); *Barnett v. Barnhart*, 381 F.3d 664, 670 (7th Cir. 2004) ("Whether a claimant's impairment equals a listing is a medical judgment, and an ALJ must consider an expert's opinion on the issue.") (citing 20 C.F.R. § 1526(b)); *Retka v. Comm'r of Soc. Sec.*, 1995 WL 697215, at *2 (6th Cir. 1995) ("Generally, the opinion of a medical expert is required before a determination of medical equivalence is made.") (citing 20 C.F.R. § 416.926(b)); *Modjewski v. Astrue*, 2011 WL 4841091, at *1 (E.D. Wis. 2011) (warning that an

ALJ who makes a step-three equivalence determination without expert-opinion evidence runs the risk of impermissibly playing doctor).

The *Stratton* court further explains that SSR 96-6p treats equivalence determinations differently from determinations as to whether an impairment meets a listing, requiring expert evidence for the former, but not the latter.  *Id.* at. *12; citing *Galloway v. Astrue*, 2008 WL 8053508, at *5 (S.D. Tex. 2008) ("The basic principle behind SSR 96-6p is that while an ALJ is capable of reviewing records to determine whether a claimant's ailments meet the Listings, expert assistance is crucial to an ALJ's determination of whether a claimant's ailments are equivalent to the Listings.") (citation and quotation marks omitted).  This expert opinion requirement can be satisfied by a signature on the Disability Determination Transmittal Form.  *Stratton*, at *12, citing SSR 96-6p, 1996 WL 374180, at *3 (The expert-opinion evidence required by SSR 96-6p can take many forms, including "[t]he signature of a State agency medical ... consultant on an SSA-831-U5 (Disability Determination and Transmittal Form)."); *Field v. Barnhart*, 2006 WL 549305, at *3 (D. Me. 2006) ("The Record contains a Disability Determination and Transmittal Form signed by Iver C. Nielson, M.D ....  discharging the commissioner's basic duty to obtain medical-expert advice concerning the Listings question.").  There is no Disability Determination and Transmittal Form as to plaintiff's physical impairments in this record.

The great weight of authority[3] holds that a record lacking any medical

advisor opinion on equivalency requires a remand.  *Stratton*, at *13 (collecting

cases); *see e.g. Caine v. Astrue*, 2010 WL 2102826, at *8 (W.D. Wash. 2010)

(directing ALJ to obtain expert-opinion evidence on equivalence where none was

in the record); *Wadsworth v. Astrue*, WL 2857326, at *7 (S.D. Ind. 2008) (holding

that where record included no expert-opinion evidence on equivalence, "[t]he ALJ

erred in not seeking the opinion of a medical advisor as to whether Mr.

Wadsworth's impairments equaled a listing").  While the government has argued in

other cases that courts in this district have concluded that the ALJ need not obtain

expert opinion evidence in cases involving an SDM, *see Gallagher v. Comm'r*,

2011 WL 3841632 (E.D. Mich. 2011) and *Timm v. Comm'r*, 2011 WL 846059

(E.D. Mich. 2011), the undersigned does not find these cases persuasive.  In both

cases, the court concluded that because the regulations permitted an SDM to make

disability determination without a medical consultant that the ALJ is, therefore,

also permitted to do so where the "single decisionmaker" model is in use.  Nothing

about the SDM model changes the ALJ's obligations in the equivalency analysis.

*See Barnett v. Barnhart*, 381 F.3d 664, 670 (7th Cir. 2004) ("Whether a claimant's

_____

[3] In *Stratton*, the court noted that a decision from Maine "stands alone" in determination that 20 C.F.R. § 404.906(b) "altered the longstanding policy that an ALJ is required to seek a medical opinion on the issue of equivalence." *Id*., citing *Goupil v. Barnhart*, 2003 WL 22466164, at *2 n. 3 (D. Me. 2003).

impairment equals a listing is a medical judgment, and an ALJ must consider an expert's opinion on the issue.") (citing 20 C.F.R. § 1526(b)); *Retka v. Comm'r of Soc. Sec.*, 1995 WL 697215, at *2 (6th Cir. 1995) ("Generally, the opinion of a medical expert is required before a determination of medical equivalence is made.") (citing 20 C.F.R. § 416.926(b)).  Based on the foregoing, the undersigned cannot conclude that the ALJ's obligation to consult a medical expert in making an equivalency determination is any different in a case where the SDM model is used. While the SDM is not required to obtain a medical opinion in cases involving physical impairment, as noted in *Timm* and *Gallagher*, nothing appears to have modified the ALJ's obligations and it makes little sense to conclude that the ALJ is relieved from obtaining an expert medical opinion in SDM cases.  Thus, the undersigned's analysis does not alter the SDM model, which leaves the SDM discretion as to whether a medical expert is consulted as to physical impairments. Rather, the undersigned's analysis leaves intact the requirements imposed on an ALJ in making an equivalency determination, which does not otherwise appear to be modified by the SDM model.  *See also*, *Maynard v. Comm'r*, 2012 WL 5471150 (E.D. Mich. 2012) ("[O]nce a hearing is requested, SSR 96-6p is applicable, and requires a medical opinion on the issue of equivalence.").

    While the undersigned is not necessarily convinced that plaintiff can show that her physical impairments satisfy the equivalence requirements, "[n]either the

Report and Recommendation
Cross-Motions for Summary Judgment
*Thames v. Comm'r*; Case No. 11-15294

ALJ nor this court possesses the requisite medical expertise to determine if [plaintiff]'s impairments ... in combination equal one of the Commissioner's listings." *Freeman v. Astrue*, 2012 WL 384838, at *4 (E.D. Wash. 2012).  For these reasons, the undersigned concludes that this matter must be remanded so that the ALJ can obtain the opinion of a qualified medical advisor on the issue of equivalence as to plaintiff's physical impairments.  Given these conclusions, plaintiff's credibility will necessarily require re-evaluation.

## IV.    RECOMMENDATION

For the reasons set forth above, the undersigned **RECOMMENDS** that plaintiff's motion for summary judgment be **GRANTED**, that defendant's motion for summary judgment be **DENIED**, that the findings of the Commissioner be **REVERSED**, and that this matter be **REMANDED** for further proceedings.

The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within 14 days of service, as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1(d).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505 (6th Cir. 1981).  Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation.  *Willis v. Sec'y of Health*

*and Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).  Pursuant to Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc.  Any objection must recite precisely the provision of this Report and Recommendation to which it pertains.  Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity.  Fed.R.Civ.P. 72(b)(2), Local Rule 72.1(d).  The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," etc.  If the Court determines that any objections are without merit, it may rule without awaiting the response.

Date: March 13, 2013                    s/Michael Hluchaniuk
                                        Michael Hluchaniuk
                                        United States Magistrate Judge

## <u>CERTIFICATE OF SERVICE</u>

I certify that on <u>March 13, 2013</u>, I electronically filed the foregoing paper with the Clerk of the Court using the ECF system, which will send electronic notification to the following: <u>John M. Brissette, Andrew J. Lievense, AUSA, and the Commissioner of Social Security</u>.

s/Tammy Hallwood<br>Case Manager<br>(810) 341-7850<br>tammy_hallwood@mied.uscourts.gov

Report and Recommendation<br>Cross-Motions for Summary Judgment<br><i>Thames v. Comm'r</i>; Case No. 11-15294